UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | No. 1:14-cv-01637-JMS-TAB |
| | ) | |
| $14,610.00 UNITED STATES CURRENCY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| BRONSON T. WESTBROOK, | ) | |
| | ) | |
| *Claimant.* | ) | |

**ORDER**

Presently pending before the Court is *pro se* Claimant Bronson Westbrook's Motion to Dismiss the Government's Complaint of Forfeiture In Rem With Prejudice, [Filing No. 35], which the Court has converted to a Motion for Summary Judgment, [Filing No. 52]. Also pending is the Government's Motion to Strike Claimant's Claim or in the Alternative Third Motion to Compel Westbrook's Answers to the Government's Discovery.  [Filing No. 39.]

**I.**
**BACKGROUND**

**A.  Mr. Westbrook's Arrest**

On March 2, 2014, Officer Michael Rehfus with the Muncie Police Department responded to a motor vehicle crash at Jackson Street and Hackley Street.  [Filing No. 42-2 at 2.]  Another officer had already arrived at the scene, and advised Officer Rehfus that two vehicles were involved, and that there were no injuries.  [Filing No. 42-2 at 2.]  One of the vehicles was a silver Cadillac driven by Mr. Westbrook.  [Filing No. 42-2 at 2.]  While speaking with Mr. Westbrook,

Officer Rehfus smelled a strong odor of burnt marijuana coming from Mr. Westbrook and from inside the vehicle. [Filing No. 42-2 at 2.] Additionally, Officer Rehfus observed that Mr. Westbrook had slightly slurred speech, was swaying back and forth, and was moving very slowly as he tried to find certain papers. [Filing No. 42-2 at 2.] Mr. Westbrook told Officer Rehfus his version of the events leading up to the accident, and Officer Rehfus then spoke to Mr. Westbrook about doing some field sobriety tests. [Filing No. 42-2 at 2.] Mr. Westbrook indicated that he did not want to undergo any field sobriety tests, and Officer Rehfus had him step out of the car so he could be handcuffed before being transported to the hospital for a blood draw. [Filing No. 42-2 at 2.]

At that point, Officer Rehfus searched Mr. Westbrook and noticed a large bulge under his belt line inside of his pants. [Filing No. 42-2 at 2.] Mr. Westbrook advised that the bulge was money, and that he kept all of his money there. [Filing No. 42-2 at 2.] Officer Rehfus had already discovered some money in Mr. Westbrook's front right side pocket, and pulled out another stack of money from under his belt line which had a rubber band around it. [Filing No. 42-2 at 2.] When Officer Rehfus checked Mr. Westbrook's pants a third time, he felt something else and pulled out a plastic bag with several individually-wrapped clear plastic bags in it, which contained a green leafy plant-like material. [Filing No. 42-2 at 2-3.] Mr. Westbrook stated that it was his marijuana, that he smokes a lot of it, and that it was for his own personal use. [Filing No. 42-2 at 3.] He stated that he keeps the bags individually wrapped so he can keep track of how much marijuana he smokes. [Filing No. 42-2 at 3.] When one of the officers searched Mr. Westbrook's vehicle, he found a bag containing more money. [Filing No. 42-2 at 3.]

Officer Rehfus transported Mr. Westbrook to the hospital for a blood draw, then to the local jail. [Filing No. 42-2 at 3.] Officer Rehfus, along with two other officers, counted all of the money seized, and it totaled $14,610.00. [Filing No. 42-2 at 3.] Additionally, the green leafy

- 2 -

plant-like substance tested positive for marijuana and totaled 24.5 grams.  [Filing No. 42-2 at 3.]
Officer Rehfus completed an Affidavit of Probable Cause for Arrest Without Warrant to charge
Mr. Westbrook with Operating While Intoxicated, Dealing Marijuana, and Possession of Mariju-
ana.  [Filing No. 42-2.]  Subsequently, the State of Indiana charged Mr. Westbrook with maintain-
ing a common nuisance, operating a vehicle while intoxicated endangering a person, and posses-
sion of marijuana.  *See State of Indiana v. Bronson T. Westbrook*, Cause No. 18C05-1403-FD-
0017 (Delaware County Circuit Court).

### B.  Notice of the Forfeiture to Mr. Westbrook and Mr. Westbrook's Claim

The Muncie Police Department seized the $14,610 on March 2, 2014, as part of the acci-
dent investigation.  [Filing No. 42-3 at 2.]  On April 2, 2014, the Drug Enforcement Administra-
tion, United States Department of Justice ("DEA") office in Indianapolis, Indiana took over the
$14,610 seizure and prepared and submitted a forfeiture report to the DEA's Forfeiture Counsel.
[Filing No. 42-3 at 2.]  The report was reviewed by a DEA attorney or paralegal to determine
whether the Indianapolis DEA office had provided adequate information to support administrative
forfeiture proceedings against the $14,610.  [Filing No. 42-3 at 2.]  Based on the evidence that
existed to justify seizing the $14,610, the DEA accepted the case for administrative forfeiture.
[Filing No. 42-3 at 2.]

From the end of April 2014 through mid-June 2014, the DEA undertook several efforts to
serve written and published notice of the $14,610 seizure on Mr. Westbrook.  [Filing No. 42-3 at
2-15.]  On July 7, 2014, the DEA received – at its Quantico, Virginia offsite mail facility – a claim
for seized property from Mr. Westbrook dated July 1, 2014.  [Filing No. 42-3 at 5; Filing No. 42-
3 at 16-17.]  The claim was forwarded to the DEA's Asset Forfeiture Section and received there
on July 9, 2014.  [Filing No. 42-3 at 5; Filing No. 42-3 at 17.]

The DEA referred Mr. Westbrook's claim to the United States Attorney for the Southern District of Indiana on July 29, 2014, by Federal Express, for initiation of judicial forfeiture proceedings.  [Filing No. 42-3 at 5; Filing No. 42-3 at 18.]  The internal DEA memorandum referring the claim to the U.S. Attorney's Office states:   "The DEA has received a timely claim on **07/07/2014**, for the property identified above [$14,610.00 U.S. Currency]."  [Filing No. 42-3 at 18 (emphasis in original).]  On the same day, the DEA notified Mr. Westbrook by letter of the referral to the U.S. Attorney's Office.  [Filing No. 42-3 at 19-10.]

On August 8, 2014, the DEA – at its Quantico, Virginia offsite mail facility – received a claim for seized property from Mr. Westbrook dated August 5, 2014, that contained language identical to the language he used in the claim received on July 7, 2014 in Quantico, Virginia. [Filing No. 42-3 at 5; Filing No. 42-3 at 21.]  The claim was forwarded to the DEA Asset Forfeiture Section, which received it on August 11, 2014.  [Filing No. 42-3 at 21-22.]

### C.  The Litigation

On October 7, 2014, the Government filed a Complaint of Forfeiture In Rem.  [Filing No. 1.]  The Government seeks forfeiture under 21 U.S.C. § 881(a)(6), claiming that the seized $14,610 constitutes "moneys…furnished or intended to be furnished by any person in exchange for a controlled substance," and/or "proceeds traceable to such an exchange," and/or "moneys…used or intended to be used to facilitate any violation of [the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*]."  [Filing No. 1 at 6.]  Mr. Westbrook filed a Verified Claim on November 4, 2014, stating that "the currency named is my property and was used in support of my education, the living expenses and well-being of myself and Mother, with whom I reside."  [Filing No. 8.]

On March 24, 2015, Mr. Westbrook filed a Motion to Dismiss, and on April 1, 2015, the Government filed a Motion to Compel Westbrook's Answers to the Government's Special Interrogatories and to Enlarge the Government's Time to Respond to the Motion to Dismiss.  [Filing No. 20; Filing No. 22.]  The Court granted the Government's Motion to Compel, ordering Mr. Westbrook to fully and completely respond to the Government's discovery by May 11, 2015, and denied Mr. Westbrook's Motion to Dismiss without prejudice.  [Filing No. 27; Filing No. 28.]  Mr. Westbrook provided supplemental answers to the Government's interrogatories, [Filing No. 29], but the Court granted the Government's Second Motion to Compel, [Filing No. 32], on the grounds that Mr. Westbrook still had not provided a complete answer to one of the interrogatories, [Filing No. 34].

Mr. Westbrook filed the pending Motion to Dismiss on October 6, 2015 (which the Court has converted into a Motion for Summary Judgment, [Filing No. 52]), arguing that the Government cannot establish that the currency was used to commit or facilitate the commission of a criminal offense, and that the Government did not timely file its Complaint.  [Filing No. 36; Filing No. 48.] On October 22, 2015, the Government filed a Motion to Strike Claimant's Claim or in the Alternative Third Motion to Compel Westbrook's Answers to the Government's Discovery, in which it asks that the Court strike Mr. Westbrook's claim as a sanction for not complying with the Court's orders requiring him to fully respond to the Government's interrogatories.  [Filing No. 39.]

## II.
### THE GOVERNMENT'S MOTION TO STRIKE OR COMPEL

The Government contends in its Motion to Strike Claimant's Claim or in the Alternative Third Motion to Compel Westbrook's Answers to the Government's Discovery that Mr. Westbrook has continuously failed to adequately answer Special Interrogatory 8, which provides:

> State the names and current addresses and telephone numbers of any occupants in the Silver 2004 Cadillac in which you were an occupant on March 2, 2014, from one hour before the accident up to and including the accident that took place at or near Jackson and Hackley Streets, Muncie, Indiana, and whether you received any of the Defendant Currency from any of these individuals, including the amount you received and the purpose for which it was given to you.

[Filing No. 22-1 at 10.]  The Court will consider the Motion to Strike first, before considering Mr. Westbrook's Motion to Dismiss.  *See* Fed. R. Civ. P., Supp. G(8)(c)(ii) (a motion to strike a claim for failure to comply with the Rule's provisions related to special interrogatories "must be decided before any motion by the claimant to dismiss the action").

### A.  Procedural History

Mr. Westbrook failed to answer Special Interrogatory 8 the first time around, after being given at least one extension of time to do so.  [Filing No. 19.]  The Magistrate Judge granted the Government's first Motion to Compel, finding that "[t]he Government reasonably needs these discovery responses to address the threshold issue of standing."  [Filing No. 27 at 2.]

Mr. Westbrook provided answers to the Government's Special Interrogatories on April 22, 2015, but the Government advised him in an April 28, 2015 letter that his responses to Special Interrogatories 2, 3, 4, 5, 6, 8, and 9 were not responsive and that the copies of documents he attached were not legible and/or complete.  [Filing No. 30-1.]  Mr. Westbrook acknowledged that some of his responses were incomplete, and also objected to Special Interrogatory 8 as beyond the scope of the information the Government is permitted to seek.  [Filing No. 30 at 2-3.]

Mr. Westbrook filed supplemental answers to the Government's Special Interrogatories on May 13, 2015, stating in response to Special Interrogatory 8: "Objection.  Outside the scope of special interrogatories that are 'limited to the claimant's identity and relationship to the defendant property.'"  [Filing No. 29 at 3.]  The supplemental answers are not signed under oath.  [Filing No. 29 at 3.]  The Government filed a second Motion to Compel, and the Magistrate Judge found that

Mr. Westbrook had failed to answer Special Interrogatory 8, and failed to sign his responses. [Filing No. 34 at 2.] The Magistrate Judge again found that the information requested in Special Interrogatory 8 was relevant to Mr. Westbrook's ownership of the seized currency, and within the scope of allowable discovery. [Filing No. 34 at 2.] Mr. Westbrook filed his second supplemental answers to the Special Interrogatories shortly thereafter, again objecting to the information sought in Special Interrogatory 8. [Filing No. 37 at 2.] The only substantive information Mr. Westbrook provided was that an individual named Sean West was in the car with him on the day of his arrest, but he does not provide any contact information for Mr. West nor does he provide the identity of the second individual who was in the car with him that day. [*See* Filing No. 37.] Mr. Westbrook also does not respond to the question of whether he received any of the seized currency from any of those individuals. [*See* Filing No. 37.]

### B. Standard of Review

Fed. R. Civ. P., Supp. G(6) provides:

(a) **Time and Scope.** The government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed….

(b) **Answers or Objections.** Answers or objections to these interrogatories must be served within 21 days after the interrogatories are served.

Fed. R. Civ. P., Supp. G(8)(c)(i)(A) provides that "the government may move to strike a claim or answer: (A) for failing to comply with Rule G(5) or (6).... " *See also U.S. v. $196,969.00 in U.S. Currency*, 719 F.3d 644, 647 (7th Cir. 2013) (government can move to dismiss a claim where claimant does not respond to Rule G(6) interrogatories).

The purpose of allowing the government to serve special interrogatories "is to smoke out fraudulent claims – claims by persons who have no colorable claims." *U.S. v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013). The Advisory Committee Notes to Rule G(8)

- 7 -

instruct, however, that a court "should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects…."

### C. Discussion

The Government argues in support of its motion that Mr. Westbrook still has not fully answered Special Interrogatory 8, which relates to whether he has a sufficient interest in the seized property.  [Filing No. 40 at 10-12.]  It contends that "[s]pecial interrogatories are appropriate that inquire into the circumstances of acquiring the money, including the names, dates, places and rea- sons for doing so in order that the Government can determine if a claimant is merely a courier or otherwise a strawman."  [Filing No. 40 at 11-12.]  The Government notes that the Magistrate Judge has already found that Special Interrogatory 8 does not exceed the scope of Rule G(6), and "is relevant to Westbrook's ownership of the disputed funds, which affects his standing to challenge this forfeiture action."  [Filing No. 40 at 12.]  The Government asserts that "there is a clear record of dilatory and contumacious conduct by Westbrook," that Mr. Westbrook has "sought to delay these procedures by continuously refusing to obey the Court's Orders…," and that Mr. Westbrook "has had nearly a year to properly respond to the discovery," and has offered no excuses for his failure to do so.  [Filing No. 40 at 15-16.]  The Government also argues that Mr. Westbrook has not signed his responses under oath.  [Filing No. 40 at 12-13.]

In his response, Mr. Westbrook states that he has provided all the information within his knowledge regarding the response to Special Interrogatory 8.  [Filing No. 44 at 4.]  Mr. Westbrook also argues that the Court should consider his Motion to Dismiss first.  [Filing No. 44 at 6.]  Finally, he asserts that Rule G only allows inquiry into his identification and his property, "not another's relationship to [that] property."  [Filing No. 44 at 7.]

The Government reiterates its arguments in its reply.  [*See* Filing No. 46.]

The Court agrees with the Magistrate Judge that the information the Government seeks in Special Interrogatory 8 is permissible as it relates to the ownership of the seized currency, which goes directly to the issue of whether Mr. Westbrook has standing to assert a claim in this litigation. *See* Fed. R. Civ. P., Supp. G(6)(a) (government may serve special interrogatories related to claimant's identity and related to the seized property); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").  The Court also finds that Mr. Westbrook's response to Special Interrogatory 8 is inadequate.  He has only provided one name in his response,[1] with no contact information, has not provided the identity or contact information for the second person, and has not responded at all regarding whether he received any of the seized currency from those individuals.

Most disturbing is Mr. Westbrook's continued objection to providing the requested information, after several Court orders to do so.  The time for objecting to Special Interrogatory 8 has long passed, and Mr. Westbrook must comply with the Court's orders to provide a full and complete response.  The Court finds Mr. Westbrook's actions up to this point to be intentionally evasive.  But, while striking Mr. Westbrook's claim may well be within the Court's discretion given the circumstances here, the Court will give Mr. Westbrook one more chance to provide a complete

---

[1] The Court notes the Declaration of Officer Rehfus, which states that when Officer Rehfus questioned Mr. Westbrook at the accident scene, Mr. Westbrook advised that there were two individuals in the car with him at the time of the accident, but that both had left the scene.  [Filing No. 42-1 at 2.]  Officer Rehfus also stated that he could see footprints on the passenger side of the vehicle which indicated that two individuals had fled the scene.  [Filing No. 42-1 at 2.]

response to Special Interrogatory 8.  *See Government v. One Hundred Seven Thousand Five Hundred Twenty ($107,520.00) In U.S. Currency*, 2014 WL 2581095 (C.D. Ill. 2014) (striking claimant's claim for failing to respond to Government's special interrogatories, but giving claimant 14 days to respond and file an amended claim, and stating "[I]n light of both the Advisory Committee Notes' warning against hasty dismissal for failure to comply with Rule G(6) and the [claimant's] pro se status…, the Court finds that one more chance is appropriate").  In affording Mr. Westbrook "one more chance," the Court has taken into consideration Mr. Westbrook's *pro se* status, and the Seventh Circuit's preference for adjudicating *pro se* claims on the merits.  *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) (noting district courts' duty "to take appropriate measures to permit the adjudication of pro se claims on the merits, rather than to order their dismissal on technical grounds").  The Court admonishes Mr. Westbrook, however, that this "one more chance" will be his last chance.  Mr. Westbrook must respond fully to Special Interrogatory 8, must provide the truth, the whole truth, and nothing but the truth, and must sign his response under oath.  Failure to do so may result in sanctions, including a monetary fine and/or dismissal of his claim with prejudice.  *See* Fed. R. Civ. P. 16(f)(1)(c) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party…fails to obey a scheduling or other pretrial order").

Accordingly, the Government's Motion to Strike Claimant's Claim or in the Alternative Third Motion to Compel Westbrook's Answers to the Government's Discovery is **DENIED IN PART** to the extent that the Court declines to strike Mr. Westbrook's claim at this time, but is **GRANTED IN PART** to the extent that the Court **ORDERS** Mr. Westbrook to file a complete response to Special Interrogatory 8, **signed under oath**, within **14 days** of this Order.  If the Court

- 10 -

deems Mr. Westbrook's response to be incomplete, Mr. Westbrook's claim may be dismissed with

prejudice, and he may be subject to a monetary fine for failing to comply with the Court's Order.

### III.
### MR. WESTBROOK'S MOTION FOR SUMMARY JUDGMENT/MOTION TO DISMISS

The Court will now consider Mr. Westbrook's Motion to Dismiss, which the Court con-

verted to a Motion for Summary Judgment.  In converting the Motion to Dismiss to a Motion for

Summary Judgment, the Court noted that the Government attached affidavits and exhibits to its

response to Mr. Westbrook's Motion to Dismiss, Mr. Westbrook referenced those documents in

his reply brief, and the Government referenced them in its sur-reply.  [Filing No. 52.]  The Court

found that the exhibits should be considered, converted the motion to a Motion for Summary Judg-

ment and, pursuant to Fed. R. Civ. P. 12(d), gave the parties an opportunity to present any addi-

tional material pertinent to the motion for the Court's consideration.  [Filing No. 52.]  Mr. West-

brook filed a Response to the Court's Entry Converting the Defendant's Motion to Dismiss to a

Motion for Summary Judgment, [Filing No. 53], in which he objects to the Court's conversion of

the motion into a Motion for Summary Judgment, but does not present additional material pertinent

to the motion.

The Court is specifically authorized to convert Mr. Westbrook's Motion to Dismiss under

Fed. R. Civ. P. 12(d) where "matters outside the pleadings are presented to and not excluded by

the court…."  Because both parties have referenced the documents the Government submitted with

its response brief in connection with the issue of whether the Government timely filed its Com-

plaint, the Court properly converted Mr. Westbrook's Motion to Dismiss as it relates to that issue

into a Motion for Summary Judgment, and Mr. Westbrook's objection to doing so is overruled.

To the extent that Mr. Westbrook objects to the conversion of his Motion to Dismiss into a Motion

for Summary Judgment on the issue of whether the Government has adequately stated a claim,

however, the Court sustains his objection.  The parties did not submit material outside the pleadings related to that issue, and the Court will treat Mr. Westbrook's motion as a Motion to Dismiss on that issue.  The Court will discuss the timeliness issue first.

### A.  Timeliness Issue

#### 1.  Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir.

2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).  The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

### 2. Discussion

Mr. Westbrook argues for the first time in his reply brief that the Government did not file its forfeiture complaint within 90 days of the filing of his claim, as required by statute.  [Filing No. 48 at 5.]

The Government filed a sur-reply, arguing that Mr. Westbrook's claim was received at the DEA's off-site mail facility in Quantico, Virginia on July 7, 2014, the Asset Forfeiture Section received the claim on July 9, 2014, and Mr. Westbrook's second claim was received by Forfeiture

Legal Counsel on August 8, 2014.  [Filing No. 49 at 3.]  The Government argues that 90 days from July 7, 2014, adding an extra day because July 7, 2014 was a Sunday, is October 7, 2014 – the day the Government filed the forfeiture complaint in this case.  [Filing No. 49 at 3.]  The Government also argues that the 90-day time period starts running from when legal counsel receives the claim, not when the claim arrives at an off-site mail facility.  [Filing No. 49 at 4.]  The Government further argues that even if the complaint was filed late, it is entitled to equitable tolling because the time period is not jurisdictional, the Government acted diligently in pursuing its rights and in providing Mr. Westbrook with notice, and any delay did not prejudice Mr. Westbrook.  [Filing No. 49 at 5-8.]

Mr. Westbrook filed a "Sur-Response" to the Government's sur-reply, in which he argues that the Government "ultimately file[d]" the forfeiture complaint on October 9, 2014, and this was untimely.  [Filing No. 51 at 2.]

18 U.S.C. § 983(a)(3) provides:

(A) Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

(B) If the Government does not –

    (i)    file a complaint for forfeiture or return the property, in accordance with subparagraph (A); or

    (ii)    before the time for filing a complaint has expired –

        (I)    obtain a criminal indictment containing an allegation that the property is subject to forfeiture; and

        (II)    take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute,

- 14 -

the Government shall promptly release the property pursuant to regulations prom-
ulgated by the Attorney General, and may not take any further action to effect the
civil forfeiture of such property in connection with the underlying offense.

Mr. Westbrook has abandoned his argument that the Government did not timely serve him

with notice of the seizure and forfeiture proceeding, clarifying instead in his reply brief that he is

really arguing that the Government did not comply with the statutory requirement that the Gov-

ernment file the forfeiture complaint within 90 days of receiving Mr. Westbrook's claim.  [*See*

Filing No. 48 at 5 ("It must be clarified that the Defendant *pro se* is not an attorney nor trained by

any institution in the discipline of law.  Therefore, misunderstanding of procedures is to be ex-

pected to some degree.  Specifically speaking, the Defendant's charge that the Plaintiff failed to

properly notice the Defendant in Forfeiture proceedings is one of those misunderstandings as well

as a mischaracterization of the facts.  What the Defendant *pro se* is alleging as also stated is that

the Plaintiff Government failed to file its complaint of forfeiture within the ninety (90) days after

a claim has been filed as required by 18 U.S.C. 983 General rules for civil forfeiture proceedings,

(3)(A)").]

As set forth above, the relevant events for purposes of determining whether the Govern-

ment complied with 18 U.S.C. § 983 are as follows:

·   July 7, 2014:  The DEA received Mr. Westbrook's claim, dated July 1, 2014, at
    its offsite mail facility in Quantico, Virginia;

·   July 9, 2014:  The DEA's Asset Forfeiture Section received Mr. Westbrook's
    claim at DEA Headquarters;

·   October 7, 2014:  The Government filed the Complaint of Forfeiture in Rem in
    this action.

If the Court considers Mr. Westbrook's claim to be "filed" for purposes of § 983(3)(A) on July 7, 2014 – the date Mr. Westbrook's claim arrived at the DEA's offsite mail facility in Quantico, Virginia, then the deadline for the Government to file the forfeiture complaint would have been October 6, 2014 (90 days from July 7, 2014 was October 5, 2014, but that was a Sunday, so the deadline would have been October 6, 2014), and the Complaint would be considered filed one day late under § 983.  If the Court considers the "filed" date to be July 9, 2014 – the date Mr. Westbrook's claim made its way to the DEA's Asset Forfeiture Section from the offsite mail facility – then 90 days from that date would be October 7, 2014 and the Complaint would be considered timely filed under § 983.

The Court looks first to the language in the Notice of Seizure sent to Mr. Westbrook, which directed him how and where to file a claim related to the seized currency.  It provided:

> All submissions must be filed with the Forfeiture Counsel, Asset Forfeiture Section, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475.  Correspondence sent via private delivery must be filed with the Forfeiture Counsel, Asset Forfeiture Section, Drug Enforcement Administration, 8701 Morrissette Drive, Springfield, VA 22152.  A PETITION, CLAIM, OR OTHER CORRESPONDENCE SHALL BE DEEMED FILED WITH THE FORFEITURE COUNSEL, ASSET FORFEITURE SECTION, WHEN RECEIVED BY THE DEA AT EITHER OF THE ADDRESSES NOTED ABOVE. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED.  The Asset ID referenced above should be used with all submissions.  Failure to include the Asset ID may cause a delay in processing your submission(s).

[Filing No. 42-3 at 6 (emphasis omitted).]

The Seventh Circuit Court of Appeals has not dealt with the issue of whether a claim is deemed filed in the forfeiture context when it is delivered to an agency's mailroom, or when it is ultimately delivered to the proper official within that agency.  Many district courts have however – although not this District – and the results are mixed.  At least one district court within this Circuit has held that a claim is deemed filed when it reaches the address listed on the claim notice,

even when that address is an offsite mailroom, and not when it reaches the actual department that will handle the claim.  *See U.S. v. Funds in the Amount of Three Hundred Fourteen Thousand Nine Hundred Dollars ($314,900.00)*, 2006 WL 794733, *2 (N.D. Ill. 2006).  Other district courts outside of this Circuit have agreed.  *See, e.g.*, *U.S. v. $34,796.49, more or less*, 2015 WL 541521, *4 (S.D. Ala. 2015)* ("a claim is 'filed' for § 983(a)(3)(A) purposes upon delivery to the designated agency at the address specified in the notice to interested parties, not when it is time-stamped as having reached the desk of a particular person or division of that agency"); *U.S. v. $229,850.00 in U.S. Currency*, 50 F.Supp.3d 1171, 1178 (D. Ariz. 2014) ("the claim is filed when it is received by the mailroom of the agency where the claimant is directed to send the claim" and not when it is received by a certain office within that agency); *U.S. v. Funds from Fifth Third Bank Account*, 2013 WL 5914101, *7 (E.D. Mich. 2013) ("the Government's position [is] untenable because it would, as a practical matter, eviscerate the 90-day limitation period imposed on the Government. For example, as the Government acknowledged at oral argument, if a claim were received by the seizing agency, but then sat in the mailroom for two weeks before being delivered to the person handling the seizure, the 90-day period would be extended for two weeks.  The same would be true if the person handling the seizure were out sick, on vacation, on maternity leave, etc.  This Court concludes that the better interpretation is that a claim is filed when it is actually received by the seizing agency [and not by a specific department within that agency]").  But some district courts consider a claim to be filed when the handling agency actually receives the claim, not when it arrives in the mailroom.  *See U.S. v. $7,696.00 in U.S. Currency*, 2013 WL 1827668, *4 (N.D. Iowa 2013) (claim not considered filed until received by Forfeiture Paralegal Specialist); *U.S. v. Eight Hundred Thousand One Hundred Twenty Seven Dollars and Seventy Cents*, 2005 WL

6967051, *5 (D. D.C. 2005) (claim deemed filed when received by specific official within the FBI, not when received by the mailroom).

The Court finds it significant that the Notice of Seizure in this case lists the Forfeiture Counsel as the specific addressee for claims. While the Notice states that a claim shall be deemed filed when received at the address where Mr. Westbrook sent his claim, it also lists the address as "Forfeiture Counsel, Asset Forfeiture Section." This implies that the claim must reach the Forfeiture Counsel, in the Asset Forfeiture Section, to be deemed filed – which occurred in this case on July 9, 2014. *See $7,696.00 in U.S. Currency*, 2013 WL 1827668 at *4 (notice that provided that claim was considered filed when it was received by the FBI Forfeiture Paralegal Specialist was not filed until it reached that individual). Accordingly, the Government timely filed the Complaint.

In any event, the Court finds that even if the clock began running on July 7, 2014 when Mr. Westbrook's claim reached the DEA's offsite mail facility, the Government would be entitled to equitable tolling to account for the one day difference between the deadline and the actual filing date. When a deadline for filing is not jurisdictional, the deadline is subject to waiver, estoppel, and tolling. *See U.S. v. Funds in the Amount of Three Hundred, Nine Thousand and Seven Hundred Fifty Dollars ($309,750.00)*, 2009 WL 1974425, *2 (N.D. Ill. 2009) (holding § 983's time limits are not jurisdictional, and stating "[f]ederal district courts are authorized to adjudicate forfeiture actions…. That is sufficient to support this court's subject matter jurisdiction. The government's timely initiation of a forfeiture action may be a necessary condition of relief, but time limits in litigation do not detract from a court's adjudicatory competence"). A party is entitled to equitable tolling when it shows: "(1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way and prevented the timely filing." *U.S. v. $229,850.00 in U.S. Currency*, 50 F.Supp.3d 1171, 1183 (D. Ariz. 2014) (quotations omitted).

- 18 -

Here, the Government argues that it worked diligently to provide Mr. Westbrook with no-tice of the seizure and forfeiture proceeding, and "made a good faith reliance on the claim having been received by the DEA Asset Forfeiture legal counsel on July 9, 2014, in calculating its com-plaint due date." [Filing No. 49 at 6.]  The Court agrees, and notes that there is no clear Seventh Circuit precedent setting forth whether Mr. Westbrook's claim should be considered filed when it reached the offsite mail facility or the Forfeiture Counsel.  This "lack of clear, consistent, and binding authority as to when the 90-day period to file a complaint commences" supports the ap-plication of equitable tolling. *Id.* at 1184.  The Court also notes that, even if the claim is considered filed when it reached the offsite mail facility, the Government filed its Complaint only one day late.  There is no evidence that this one-day delay caused any prejudice to Mr. Westbrook.  Fur-thermore, dismissing the Complaint based on a one-day delay would be a draconian measure, *id.* at 1185 ("dismissal of the Government's complaint would have a draconian effect on the Govern-ment's case"), and would ignore the Seventh Circuit's strong preference for resolving disputes on the merits, *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009).  Accordingly, the Court denies Mr. Westbrook's motion as it relates to the timeliness of the Government's Complaint.

**B.   Adequacy of the Government's Allegations**

*1.   Standard of Review*

Civil forfeiture proceedings are governed by 18 U.S.C. § 983.  Civil forfeiture complaints are subject to a pleading standard described in Fed. R. Civ. P., Supp. G.  That rule states, in relevant part:

> The complaint must:  (a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and – if different – its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to sup-port a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P., Supp. G(2).

"Civil forfeiture actions are independent of criminal proceedings." *U.S. v. $12,900 in U.S. Currency*, 803 F. Supp. 1459, 1465 (S.D. Ind. 1992) (citing *One Lot Emerald Cut Stones & One Ring v. U.S.*, 409 U.S. 232, 234-35 (1972)).  The Government "is not required to show that the claimant was convicted of a crime related to the seized property," and "an acquittal or dismissal of criminal charges does not affect the Government's ability to pursue a civil forfeiture action, even if the civil forfeiture arises from the same activity." *$12,900 in U.S. Currency*, 803 F.Supp. at 1465; s*ee also U.S. v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984) ("an acquittal in a criminal trial does not bar a civil action for forfeiture even though based on the identical facts"); *Sequoia Books, Inc. v. Ingemunson*, 901 F.2d 630, 640 (7th Cir. 1990) ("if a defendant is acquitted of a criminal charge, the principles of res judicata, collateral estoppel, and double jeopardy do not bar a separate, subsequent civil forfeiture action involving the same underlying facts").

       2.  *Discussion*

Mr. Westbrook argues in his motion that the Government cannot establish a connection between the seized currency and the commission of a criminal offense.  [Filing No. 36 at 2.]  He notes that he has not been charged by the State of Indiana with dealing a controlled substance. [Filing No. 36 at 2.]

The Government responds that it has set forth enough facts to support a reasonable belief that it will prevail at trial, and details its allegations.  [Filing No. 42 at 14-15.]

On reply, Mr. Westbrook argues that the Government has not provided "legitimate and hard evidence" that the seized currency constitutes proceeds from criminal activity.  [Filing No. 48 at 3.]

Mr. Westbrook's principal argument is that the Complaint should be dismissed because he was not charged with or convicted of distributing a controlled substance. But this premise is legally incorrect because civil forfeiture proceedings are independent of criminal proceedings. *See, e.g.,* *$12,900 in U.S. Currency*, 803 F. Supp. at 1465 (noting that "[c]ivil forfeiture actions are independent of criminal proceedings" and that the Government "is not required to show that the claimant was convicted of a crime related to the seized property") (citations omitted).

Mr. Westbrook also argues that the Government has not presented any evidence that the seized currency is connected to any criminal activity. Probable cause is the applicable standard in a civil forfeiture proceeding, however, and "the Government need not show probable cause until the forfeiture trial." *Id.* In fact, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D); *see also* *$12,900 in U.S. Currency*, 803 F. Supp. at 1465 ("In other words, the Government is entitled to supplement its evidence of probable cause between the filing of the complaint and the forfeiture trial.").

Mr. Westbrook does not argue that the Government has failed to comply with the specific requirements of Fed. R. Civ. P., Supp. G(2), but only focuses on the fact that he was not charged with distributing an illegal substance, and that the Government has not presented evidence connecting the seized currency to criminal activity. Because the Government need not make either showing at this stage of the litigation, the Court denies Mr. Westbrook's motion on this ground.

In sum, the Court finds that the Government timely filed its Complaint and, in any event, would be entitled to equitable tolling to account for the extra day it took to file the Complaint if the Complaint was untimely. Additionally, the Government has satisfied the requirements of Fed. R. Civ. P., Supp. G(2), and made the requisite allegations to maintain a forfeiture proceeding at

this stage of the litigation.  Mr. Westbrook's Motion to Dismiss (partially converted into a Motion for Summary Judgment), [Filing No. 35], is **DENIED**.

## IV.
### CONCLUSION

The Government's Motion to Strike Claimant's Claim or in the Alternative Third Motion to Compel Westbrook's Answers to the Government's Discovery, [Filing No. 39], is **DENIED IN PART** to the extent that the Court declines to strike Mr. Westbrook's claim at this time, but is **GRANTED IN PART** to the extent that the Court **ORDERS** Mr. Westbrook to file a complete response to Special Interrogatory 8, **signed under oath**, within **14 days** of this Order.  If the Court deems Mr. Westbrook's response to be incomplete, Mr. Westbrook's claim may be dismissed with prejudice, and he may be subject to a monetary fine for failing to comply with the Court's Order.

Additionally, for the reasons discussed above, Mr. Westbrook's Motion to Dismiss (partially converted into a Motion for Summary Judgment), [Filing No. 35], is **DENIED**.

Date:  February 29, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Bronson T. Westbrook
1334 S. Burlington Dr.
Muncie, IN 47302