UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | No. 1:14-cv-01637-JMS-TAB |
| | ) | |
| $14,610.00 UNITED STATES CURRENCY, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| BRONSON T. WESTBROOK, | ) | |
| | ) | |
| *Claimant*. | ) | |

**ORDER**

Presently pending before the Court are: (1) *pro se* Claimant Bronson Westbrook's Response to the Court's Provision of "One More Chance to Provide a Complete Response to Special Interrogatory 8," [Filing No. 55], which the Court treats as a Motion to Reconsider its February 29, 2016 Order, [*see* Filing No. 56]; and (2) the Government's Second Motion to Strike Claimant's Claim, [Filing No. 58].

**I.
BACKGROUND**[1]

**A. Mr. Westbrook's Arrest**

On March 2, 2014, Officer Michael Rehfus with the Muncie Police Department responded to a motor vehicle crash at Jackson Street and Hackley Street. [Filing No. 42-2 at 2.] Another

---

[1] These background facts are taken largely from the Court's February 29, 2016 Order. [Filing No. 54.]

officer had already arrived at the scene, and advised Officer Rehfus that two vehicles were involved, and that there were no injuries. [Filing No. 42-2 at 2.] One of the vehicles was a silver Cadillac driven by Mr. Westbrook. [Filing No. 42-2 at 2.] Mr. Westbrook advised Officer Rehfus that there were two individuals in the car with him at the time of the accident, but that both had left the scene. [Filing No. 42-1 at 2.] Officer Rehfus could see footprints on the passenger side of the vehicle which indicated that two individuals had fled the scene. [Filing No. 42-1 at 2.] While speaking with Mr. Westbrook, Officer Rehfus smelled a strong odor of burnt marijuana coming from Mr. Westbrook and from inside the vehicle. [Filing No. 42-2 at 2.] Additionally, Officer Rehfus observed that Mr. Westbrook had slightly slurred speech, was swaying back and forth, and was moving very slowly as he tried to find certain papers. [Filing No. 42-2 at 2.] Mr. Westbrook told Officer Rehfus his version of the events leading up to the accident, and Officer Rehfus then spoke to Mr. Westbrook about doing some field sobriety tests. [Filing No. 42-2 at 2.] Mr. Westbrook indicated that he did not want to undergo any field sobriety tests, and Officer Rehfus had him step out of the car so he could be handcuffed before being transported to the hospital for a blood draw. [Filing No. 42-2 at 2.]

At that point, Officer Rehfus searched Mr. Westbrook and noticed a large bulge under his belt line inside of his pants. [Filing No. 42-2 at 2.] Mr. Westbrook advised that the bulge was money, and that he kept all of his money there. [Filing No. 42-2 at 2.] Officer Rehfus had already discovered some money in Mr. Westbrook's front right side pocket, and pulled out another stack of money from under his belt line which had a rubber band around it. [Filing No. 42-2 at 2.] When Officer Rehfus checked Mr. Westbrook's pants a third time, he felt something else and pulled out a plastic bag with several individually-wrapped clear plastic bags in it, which contained a green leafy plant-like material. [Filing No. 42-2 at 2-3.] Mr. Westbrook stated that it was his

marijuana, that he smokes a lot of it, and that it was for his own personal use. [Filing No. 42-2 at 3.] He stated that he keeps the bags individually wrapped so he can keep track of how much marijuana he smokes. [Filing No. 42-2 at 3.] When one of the officers searched Mr. Westbrook's vehicle, he found a bag containing more money. [Filing No. 42-2 at 3.]

Officer Rehfus transported Mr. Westbrook to the hospital for a blood draw, then to the local jail. [Filing No. 42-2 at 3.] Officer Rehfus, along with two other officers, counted all of the money seized, and it totaled $14,610. [Filing No. 42-2 at 3.] Additionally, the green leafy plant-like substance tested positive for marijuana and totaled 24.5 grams. [Filing No. 42-2 at 3.] Officer Rehfus completed an Affidavit of Probable Cause for Arrest Without Warrant to charge Mr. Westbrook with Operating While Intoxicated, Dealing Marijuana, and Possession of Marijuana. [Filing No. 42-2.] Subsequently, the State of Indiana charged Mr. Westbrook with maintaining a common nuisance, operating a vehicle while intoxicated endangering a person, and possession of marijuana. *See State of Indiana v. Bronson T. Westbrook*, Cause No. 18C05-1403-FD-0017 (Delaware County Circuit Court).

### B. Notice of the Forfeiture to Mr. Westbrook and Mr. Westbrook's Claim

The Muncie Police Department seized the $14,610 on March 2, 2014, as part of the accident investigation. [Filing No. 42-3 at 2.] On April 2, 2014, the Drug Enforcement Administration, United States Department of Justice ("DEA") office in Indianapolis, Indiana took over the $14,610 seizure and prepared and submitted a forfeiture report to the DEA's Forfeiture Counsel. [Filing No. 42-3 at 2.] The report was reviewed by a DEA attorney or paralegal to determine whether the Indianapolis DEA office had provided adequate information to support administrative forfeiture proceedings against the $14,610. [Filing No. 42-3 at 2.] Based on the evidence that

existed to justify seizing the $14,610, the DEA accepted the case for administrative forfeiture. [Filing No. 42-3 at 2.]

From the end of April 2014 through mid-June 2014, the DEA undertook several efforts to serve written and published notice of the $14,610 seizure on Mr. Westbrook. [Filing No. 42-3 at 2-15.] On July 7, 2014, the DEA received – at its Quantico, Virginia offsite mail facility – a claim for seized property from Mr. Westbrook dated July 1, 2014. [Filing No. 42-3 at 5; Filing No. 42-3 at 16-17.] The claim was forwarded to the DEA's Asset Forfeiture Section and received there on July 9, 2014. [Filing No. 42-3 at 5; Filing No. 42-3 at 17.]

The DEA referred Mr. Westbrook's claim to the United States Attorney for the Southern District of Indiana on July 29, 2014, by Federal Express, for initiation of judicial forfeiture proceedings. [Filing No. 42-3 at 5; Filing No. 42-3 at 18.] The internal DEA memorandum referring the claim to the U.S. Attorney's Office states: "The DEA has received a timely claim on **07/07/2014**, for the property identified above [$14,610.00 U.S. Currency]." [Filing No. 42-3 at 18] (emphasis in original).] On the same day, the DEA notified Mr. Westbrook by letter of the referral to the U.S. Attorney's Office. [Filing No. 42-3 at 19-10.]

On August 8, 2014, the DEA – at its Quantico, Virginia offsite mail facility – received a claim for seized property from Mr. Westbrook dated August 5, 2014, that contained language identical to the language he used in the claim received on July 7, 2014 in Quantico, Virginia. [Filing No. 42-3 at 5; Filing No. 42-3 at 21.] The claim was forwarded to the DEA Asset Forfeiture Section, which received it on August 11, 2014. [Filing No. 42-3 at 21-22.]

### C. The Litigation

On October 7, 2014, the Government filed a Complaint of Forfeiture In Rem. [Filing No. 1.] The Government seeks forfeiture under 21 U.S.C. § 881(a)(6), claiming that the seized $14,610

constitutes "moneys…furnished or intended to be furnished by any person in exchange for a controlled substance," and/or "proceeds traceable to such an exchange," and/or "moneys…used or intended to be used to facilitate any violation of [the Controlled Substances Act, 21 U.S.C. § 801 et seq.]." [Filing No. 1 at 6.] Mr. Westbrook filed a Verified Claim on November 4, 2014, stating that "the currency named is my property and was used in support of my education, the living expenses and well-being of myself and Mother, with whom I reside." [Filing No. 8.]

On March 24, 2015, Mr. Westbrook filed a Motion to Dismiss, and on April 1, 2015, the Government filed a Motion to Compel Westbrook's Answers to the Government's Special Interrogatories and to Enlarge the Government's Time to Respond to the Motion to Dismiss. [Filing No. 20; Filing No. 22.] The Government's Motion to Compel related in part to Special Interrogatory 8, which it had served on Mr. Westbrook. Special Interrogatory 8 provided:

> State the names and current addresses and telephone numbers of any occupants in the Silver 2004 Cadillac in which you were an occupant on March 2, 2014, from one hour before the accident up to and including the accident that took place at or near Jackson and Hackley Streets, Muncie, Indiana, and whether you received any of the Defendant Currency from any of these individuals, including the amount you received and the purpose for which it was given to you.

[Filing No. 22-1 at 10.]

The Court granted the Government's Motion to Compel, ordering Mr. Westbrook to fully and completely respond to the Government's discovery by May 11, 2015, and denied Mr. Westbrook's Motion to Dismiss without prejudice. [Filing No. 27; Filing No. 28.] Mr. Westbrook provided supplemental answers to the Government's interrogatories, [Filing No. 29], but the Court granted the Government's Second Motion to Compel, [Filing No. 32], on the grounds that Mr. Westbrook still had not provided a complete answer to Special Interrogatory 8, [Filing No. 34]. On September 21, 2015, the Court ordered Mr. Westbrook to provide a complete response to Special Interrogatory 8 within 14 days. [Filing No. 34 at 3.] Shortly thereafter, Mr. Westbrook filed

a "Supplemental Response" to the Government's Second Motion to Compel, stating that in response to Special Interrogatory 8 he could only identify one of the individuals who was with him on March 2, 2014. [Filing No. 37 at 1-2.] Mr. Westbrook stated that the individual's name was Sean West, and that he did not know the other individual's identity. [Filing No. 37 at 1-2.] Mr. Westbrook did not provide an address or telephone number for Mr. Westbrook, and also did not sign his response under oath. [Filing No. 37 at 1-2.]

Mr. Westbrook filed a Motion to Dismiss on October 6, 2015 (which the Court converted into a Motion for Summary Judgment, [Filing No. 52]), arguing that the Government cannot establish that the currency was used to commit or facilitate the commission of a criminal offense, and that the Government did not timely file its Complaint. [Filing No. 36; Filing No. 48.] On October 22, 2015, the Government filed a Motion to Strike Claimant's Claim or in the Alternative Third Motion to Compel Westbrook's Answers to the Government's Discovery, in which it asked that the Court strike Mr. Westbrook's claim as a sanction for not complying with the Court's orders requiring him to fully respond to Special Interrogatory 8. [Filing No. 39.]

On February 29, 2016, the Court denied Mr. Westbrook's Motion to Dismiss, denied in part the Government's Motion to Strike or in the Alternative Third Motion to Compel Westbrook's Answers to the Government's Discovery to the extent that it declined to strike Mr. Westbrook's claim at that time, and granted the motion in part to the extent that the Court ordered Mr. Westbrook to file a complete response to Special Interrogatory 8, signed under oath, within 14 days of the Order. [Filing No. 54 at 22.]

Mr. Westbrook did not file any response to Special Interrogatory 8 within the deadline. Instead, four days past the deadline he filed a Response to the Court's Provision of "One More Chance to Provide a Complete Response to Special Interrogatory 8," [Filing No. 55], which the

Court treats as a Motion to Reconsider its February 29, 2016 Order denying Mr. Westbrook's Motion to Dismiss and granting in part the Government's Motion to Strike. Subsequently, on April 1, 2016, the Government filed a Second Motion to Strike Claimant's Claim, based on Mr. Westbrook's failure to provide a full and complete answer to Special Interrogatory 8. [Filing No. 58.]

## II.
## MR. WESTBROOK'S MOTION TO RECONSIDER

### A. Standard of Review

"Motions to reconsider 'are not replays of the main event.'" *Dominguez v. Lynch*, 612 Fed. Appx. 388, 390 (7th Cir. 2015) (quoting *Khan v. Holder*, 766 F.3d 689, 696 (7th Cir. 2014)). A motion to reconsider is only appropriate where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). Because such problems "rarely arise," a motion to reconsider "should be equally rare." *Id*. A motion to reconsider should not "serve as the occasion to tender new legal theories for the first time." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985); *see also Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("[A] motion for reconsideration is an improper vehicle to introduce evidence previously available or to tender new legal theories"). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

**B. Discussion**

In his Motion to Reconsider, Mr. Westbrook appears to take issue with the Court's rulings on both the Government's Motion to Strike and his Motion to Dismiss. The Court will reconsider each of its decisions in turn.[2]

*1. Order on Government's Motion to Strike*

The Government originally moved to strike Mr. Westbrook's claim, arguing that he had failed to answer Special Interrogatory 8. The Court found that the information the Government seeks in Special Interrogatory 8 is permissible, because it relates to the ownership of the seized currency, which goes directly to the issue of whether Mr. Westbrook has standing to assert a claim in the litigation. [Filing No. 54 at 9.] The Court also found that Mr. Westbrook's response to Special Interrogatory 8 was inadequate, as he had only provided one name in his response, with no contact information, did not provide the identity or contact information for the second person, and did not respond at all regarding whether he received any of the seized currency from those individuals. [Filing No. 54 at 9.] The Court noted that Mr. Westbrook continued to object to providing the requested information, despite several Court orders to do so, and had been intentionally evasive. [Filing No. 54 at 9.] The Court gave Mr. Westbrook "one more chance" to provide a complete response to Special Interrogatory 8, ordering him to "respond fully to Special Interrogatory 8, [to] provide the truth, the whole truth, and nothing but the truth, [and to] sign his response under oath" by March 14, 2016. [Filing No. 54 at 10.] The Court warned Mr. Westbrook that

---

[2] In its February 29, 2016 Order, the Court considered the Government's Motion to Strike first, before considering Mr. Westbrook's Motion to Dismiss, and will do so again on reconsideration. *See* Fed. R. Civ. P., Supp. G(8)(c)(ii) (a motion to strike a claim for failure to comply with the Rule's provisions related to special interrogatories "must be decided before any motion by the claimant to dismiss the action").

- 8 -

failure to comply with the Court's Order "may result in sanctions, including a monetary fine and/or dismissal of his claim with prejudice." [Filing No. 54 at 10.]

In his Motion to Reconsider, Mr. Westbrook argues that he did respond to Special Interrogatory 8, but just did not give the answer the Government or the Court wanted. [Filing No. 55 at 4.] Specifically, he contends that in response to the Government's Special Interrogatories, he "would have listed those individual within the category of sources where [the currency] was accumulated from had they (the two individuals) been a source of Defendant's funds!" [Filing No. 55 at 4.] Mr. Westbrook goes on to state "I respond now again clearly that I did not receive any of my Defendant property of $14,610.00 U.S. Currency from either of the individuals that were in my car that early morning!" [Filing No. 55 at 4.] Mr. Westbrook contends that "[t]here is no other information relative to or known by the *pro se* Defendant." [Filing No. 55 at 5.] Mr. Westbrook also argues that he was entitled to object to Special Interrogatory 8, and has not delayed proceedings because he did not have any responsive information. [Filing No. 55 at 6.] Finally, he asserts that the Government could have obtained information from Sean West, the individual that he identified. [Filing No. 55 at 6.]

In response, the Government argues that Mr. Westbrook does not point to any significant change in fact or law since the Court's initial ruling, nor does he argue that the Court misunderstood the issues or considered issues beyond those presented by the parties. [Filing No. 57 at 4.] The Government notes that Mr. Westbrook stated the name of one of the individuals in the car with him the morning of his arrest, Sean West, in his Supplemental Response to the Government's Second Motion to Compel, and not specifically as a response to Special Interrogatory 8. [Filing No. 57 at 4.] It contends that Mr. Westbrook largely rehashes his earlier arguments, and that he could have asserted his argument that the Government "missed" his answer (i.e., that he would

have listed the individuals in response to other interrogatories about the source of the funds, if either individual was the source) in response to the Government's Motion to Strike but failed to do so. [Filing No. 57 at 5.]

On reply, Mr. Westbrook argues that he did not know the second individual in the car on the morning of his arrest, and that the Court should decide the case on the merits. [Filing No. 63 at 2.]

Mr. Westbrook has not pointed to any error of apprehension, any significant change in the law, any significant change in the facts, or any issue the Court considered in its Order granting in part the Government's Motion to Strike that was outside the scope of the issues raised by the parties such that reconsideration would be appropriate. *Bank of Waunakee*, 906 F.2d at 1191. As for the only remaining ground for reconsideration – if the Court has misunderstood a party – Mr. Westbrook argues that both the Government and the Court somehow "missed" his answer to Special Interrogatory 8. But this argument misses the mark for several reasons. First, Mr. Westbrook did not raise this argument in response to the Government's Motion to Strike, so this new argument cannot serve as the basis for reconsideration. *Bally Export Corp.*, 804 F.2d at 404 ("[A] motion for reconsideration is an improper vehicle to introduce evidence previously available or to tender new legal theories"). Second, Mr. Westbrook essentially argues that he would have listed the information responsive to Special Interrogatory 8 if he knew it. This argument is unavailing. Mr. Westbrook was still obligated to provide a full response, signed under oath, and did not do so. Finally, the information Mr. Westbrook provided regarding Sean West was in his response to the Government's Second Motion to Compel, and not a formal response to Special Interrogatory 8, signed under oath as required by the Federal Rules of Civil Procedure. And, in any event, the

Court has already found that simply providing Mr. West's name was not an adequate response to Special Interrogatory 8. [Filing No. 54 at 9.]

In sum, the only potential argument Mr. Westbrook presents that could support reconsideration is a new argument that he did not make in response to the Government's Motion to Strike, and is unavailing in any event. Accordingly, the Court **DENIES** Mr. Westbrook's Motion to Reconsider as it relates to the Court's Order on the Government's Motion to Strike Claimant's Claim or in the Alternative Third Motion to Compel Westbrook's Answers to the Government's Discovery, [Filing No. 55].

## 2. *Order on Mr. Westbrook's Motion to Dismiss*

Mr. Westbrook originally moved to dismiss the Government's Complaint, arguing that the Government did not comply with the statutory requirement that it file the Complaint within 90 days of receiving Mr. Westbrook's claim and that the Government had not set forth the requisite allegations for a forfeiture complaint. [*See, e.g.*, Filing No. 48 at 3-5.] The Court converted Mr. Westbrook's Motion to Dismiss into a Motion for Summary Judgment, after giving the parties notice and an opportunity to file additional documents. [Filing No. 52.] As to the timing of Mr. Westbrook's forfeiture claim, the Court found – based on the language of the Notice of Seizure – that the claim was properly considered "filed" on July 9, 2014, when the claim made its way to the DEA's Asset Forfeiture Section from the offsite mail facility. [Filing No. 54 at 18.] Because it was filed on July 9, 2014, the Court found that the Government timely filed its Complaint on October 7, 2014. [Filing No. 54 at 18.] The Court also found that even if the claim was considered filed on July 7, 2014, when the claim reached the DEA's offsite mail facility, the Government would be entitled to equitable tolling to account for the one day difference between the deadline and the actual filing date. [Filing No. 54 at 18.] Additionally, the Court found that the Government

had set forth the requisite allegations to maintain a forfeiture proceeding under Fed. R. Civ. P., Supp. G(2). [Filing No. 54 at 19-22.]

In his Motion to Reconsider, Mr. Westbrook argues that the Court should not have converted his Motion to Dismiss into a Motion for Summary Judgment. [Filing No. 55 at 9.] He also asserts that the "expected delivery date" of July 3, 2014 on his mailed postage receipt indicates that his claim should have been file-stamped on July 3, 2014. [Filing No. 55 at 3.] Mr. Westbrook also reiterates his arguments from his Motion to Dismiss that the Government did not adequately allege a connection between the currency and the commission of a criminal offense. [Filing No. 55 at 2-3.]

In response, the Government argues that Mr. Westbrook does not point to any changes in the facts or law, or assert that the Court misunderstood the issues or considered issues outside the scope of what the parties presented. [Filing No. 57 at 6.] The Government also contends that Mr. Westbrook's new argument that his claim was expected to be received on July 3, so that should be the date used for calculating whether the Government timely filed the Complaint, fails because the undisputed evidence shows that the claim was received by the DEA's offsite mail facility on July 7, 2014. [Filing No. 57 at 7-8.] The Government notes that Mr. Westbrook raises the same arguments regarding the sufficiency of the Government's allegations as he did in connection with his Motion to Dismiss. [Filing No. 57 at 7.]

On reply, Mr. Westbrook seems to concede that it was appropriate for the Court not to grant his Motion to Dismiss on the issue of whether the Complaint was timely filed. [*See* Filing No. 63 at 2 ("In conclusion, the Defendant *pro se* accepts this court's decision to not grant the Defendant's motion to dismiss the Plaintiff's claim for forfeiture for what the court calls 'equitable tolling' and what I call 'questionable tolling'").]

The Court agrees that Mr. Westbrook has not raised any arguments that warrant reconsideration. He has not pointed to any changes in the facts or law since the Court denied his Motion to Dismiss, nor has he argued that the Court misapprehended an issue or considered an issue outside the scope of what the parties presented. Again, as with his Motion to Reconsider the Court's Order on the Government's Motion to Strike, Mr. Westbrook has asserted a new argument not raised in connection with the Motion to Dismiss – that the "filed" date for his claim should be considered July 3, 2014 because that was the date he expected his claim to be received. [Filing No. 55 at 3.] Mr. Westbrook is prohibited from raising new arguments that he could have raised when briefing the original Motion to Dismiss. *Bally Export Corp.*, 804 F.2d at 404. In any event, Mr. Westbrook has not pointed to any legal authority (and there is none) standing for the proposition that a claim is deemed filed when the sender expects that it will be received. Even if the Court were to consider this argument, it would reject it.

Mr. Westbrook primarily rehashes the arguments he raised in support of his Motion to Dismiss as to both the timing and adequacy of allegations issues, and raises a new argument that is not properly raised in connection with a Motion to Reconsider and is unavailing in any event. The Court **DENIES** Mr. Westbrook's Motion to Reconsider to the extent that it applies to the Court's denial of Mr. Westbrook's Motion to Dismiss. [Filing No. 55.]

### III.
### THE GOVERNMENT'S SECOND MOTION TO STRIKE CLAIMANT'S CLAIM

The Government argues in its Second Motion to Strike that Mr. Westbrook has still failed to provide a full response to Special Interrogatory 8, and requests that the Court strike his claim. [*See* Filing No. 59.]

### A. Background

As discussed above, the Court denied in part the Government's initial Motion to Strike to the extent that it declined to strike Mr. Westbrook's claim at that time, but granted the Motion to Strike in part to the extent that it ordered Mr. Westbrook to file a complete response to Special Interrogatory 8, signed under oath, within 14 days of its Order. [Filing No. 54.] The Court issued its Order on February 29, 2016, making Mr. Westbrook's complete response to Special Interrogatory 8, signed under oath, due on March 14, 2016. It is undisputed that Mr. Westbrook did not file any response to Special Interrogatory 8 by March 14, 2016. Instead, Mr. Westbrook filed his Motion to Reconsider, [Filing No. 55], which the Court has denied above, on March 18, 2016.

### B. Discussion

In its Second Motion to Strike, the Government argues that Mr. Westbrook has continuously refused to comply with the Court's orders regarding answering Special Interrogatory 8. [Filing No. 59 at 15.] Specifically, the Government points to three different instances where the Court ordered Mr. Westbrook to fully respond to the Government's Special Interrogatories, and argues that "[t]he information that the United States requested Westbrook to produce or answer is under his control and germane to his claim that he has an ownership interest in the property." [Filing No. 59 at 17.] The Government argues that Mr. Westbrook's failure to provide the requested information "blocks the ability of the United States to litigate his standing and to pursue forfeiture of the case." [Filing No. 59 at 17.] The Government asserts that striking Mr. Westbrook's claim is appropriate under Fed. R. Civ. P., Supp. G(8)(c)(i)(A) and Fed. R. Civ. P. 37(b)(2). [Filing No. 59 at 17-18.] It contends that Mr. Westbrook's *pro se* status is irrelevant, and points to "a clear record of dilatory and contumacious conduct" by Mr. Westbrook. [Filing No. 59 at 18-19.]

Mr. Westbrook responds by providing a response to Special Interrogatory 8 within his response brief, which states:

> **Defendant's answer** – Sean West, address unknown, telephone number unknown, no, I did not receive any of the Defendant Currency from Sean West.
>
> **Second party** – Unknown, address unknown, telephone number unknown and no, I did not receive any of the Defendant Currency from this unknown individual.

[Filing No. 62 at 3 (emphasis in original).] The response also states "[u]nder the penalty of perjury, I Bronson T. Westbrook state above and do hereby sign below that the answer(s) given *again* to the Plaintiff's special interrogatory #8 is a true and accurate answer and to the best of my knowledge relative to question presented," and is signed and dated by Mr. Westbrook. [Filing No. 62 at 4 (emphasis in original).]

On reply, the Government reiterates the arguments it makes in its opening brief. [Filing No. 64 at 3-4.]

Mr. Westbrook has refused to comply with numerous Court orders requiring him to fully respond to Special Interrogatory 8 – most recently, the Court's February 29, 2016 Order. [*See* Filing No. 27 at 2 (April 27, 2015 Order requiring Mr. Westbrook to "fully and completely respond to the Government's discovery by May 11, 2015"); Filing No. 34 (September 21, 2015 Order granting the Government's Second Motion to Compel and ordering Mr. Westbrook to "give a complete answer to interrogatory number eight and sign his supplemental response under oath" within 14 days); Filing No. 54 at 10-11 (February 29, 2016 Order granting the Government's Motion to Strike or in the Alternative Third Motion to Compel to the extent that Mr. Westbrook was ordered to "file a complete response to Special Interrogatory 8, signed under oath, within 14 days of this Order" ) (emphasis omitted).] In the Court's most recent Order, it cautioned Mr. Westbrook that this would be his "last chance" to fully respond to Special Interrogatory 8, and that he must

provide "the truth, the whole truth, and nothing but the truth, and must sign his response under oath" within 14 days of the date of the Order, which would have been March 14, 2016. [Filing No. 54 at 10.] The Court warned that "[f]ailure to do so may result in sanctions, including a monetary fine and/or dismissal of [Mr. Westbrook's] claim with prejudice." [Filing No. 54 at 10.]

Instead of providing his response to Special Interrogatory 8 by March 14, 2016, as the Court ordered him to do in its February 29, 2016 Order, Mr. Westbrook filed a Motion to Reconsider on March 18, 2016. Mr. Westbrook then waited until the filing of his response brief in connection with the Government's Second Motion to Strike, which he filed on April 22, 2016 (almost six weeks after the Court's "last chance" deadline for him to file his complete, signed response to Special Interrogatory 8), to provide a response that essentially gives no information. [*See* Filing No. 62 at 3-4 (providing only the name Sean West with no identifying information, stating he did not know who the second individual was, and stating that he did not receive any of the currency from either individual).]

The substance of Mr. Westbrook's response is irrelevant for purposes of the Court's decision. The Court finds that Mr. Westbrook failed to comply with its February 29, 2016 Order, and missed his last chance to comply with Fed. R. Civ. P., Supp. G(6) and the Court's numerous orders, by failing to file his complete response, signed under oath, by the March 14, 2016 deadline. Mr. Westbrook has continuously displayed a disregard for the Court's authority. Even to the end, he shows no remorse for failing to comply with orders, instead stating that he is providing his response "***again***," and stating "[p]erhaps it is not the format of the answers but perhaps the Plaintiff government in its cozy and companion District court did not get the answer(s) it was seeking, so therefore has cried to the court that the *pro se* Defendant has not complied." [Filing No. 62 at 4 (emphasis in original).] The Court will not condone Mr. Westbrook's disregard for the rules, and notes

that "litigants who decide to play by rules of their own invention will find that the game cannot be won." *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994).

The Court also finds that Mr. Westbrook's conduct thus far has been willful and in bad faith. As discussed above, Mr. Westbrook has ignored at least three Court orders to provide a complete response to Special Interrogatory 8, signed under oath. Notably, the Government served the Special Interrogatories on Mr. Westbrook on November 11, 2014. It is now June 2016, over one and a half years later, and essentially nothing has happened in this case other than the Government repeatedly attempting to obtain a full response to Special Interrogatory 8. Mr. Westbrook finally decided to provide a response, signed under oath, almost six weeks after the Court's deadline for his "last chance" to do so. This response provided essentially no information. If Mr. Westbrook really had no responsive information, he could have provided his response stating that this was the case the first time he was requested to do so. Instead, he has repeatedly wasted the Government's and this Court's resources by continually objecting to the information sought in Special Interrogatory 8 – even after the Court had found that the information was relevant and the Government was entitled to seek it – and by willfully and in bad faith ignoring the Court's numerous orders to provide a complete response. His untimely response, contained in his response brief, does not absolve him of wrongdoing relating to the Court's previous orders.

The Court may order sanctions for failure to cooperate in discovery. Fed. R. Civ. P. 37(b) and (d). The Seventh Circuit has recognized that a party who refuses "to play by the rules of the litigation game" may have his case dismissed as a sanction for his behavior, particularly when he has had "ample opportunity to mend [his] ways" and there is "no hint of improvement." *Ball v. City of Chicago*, 2 F.3d 752, 754 (7th Cir. 1993). Mr. Westbrook's willful disregard of numerous Court orders displays a pattern of contumacious conduct, with no indication that the pattern will

come to an end.  Accordingly, the Court finds that striking his claim is warranted.  Fed. R. Civ. P. Supp. G(8)(c)(i)(A)) (Government may move to strike claim for claimant's failure to comply with rules related to special interrogatories); *United States v. Four Thousand Two Hundred Ninety and 00/100 ($4290.00) in U.S. Currency, Illinois*, 2014 WL 859561, *3-4 (C.D. Ill. 2014) (claimant's continued failure to provide complete responses to Government's special interrogatories propounded under Fed. R. Civ. P., Supp. G(6) warranted striking claim); *United States v. Eight Thousand Seven Hundred Ninety-One and 55/100 ($8.791.55) in U.S. Currency*, 2014 WL 3953654, *2 (C.D. Ill. 2014) (evidence indicated claimant's failure to respond to Government's special interrogatories "stems not from lack of awareness or capacity, but of volition," so striking claim was appropriate); *see also Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir. 1992) (dismissing case for failure to comply with discovery orders, and stating "as soon as a pattern of noncompliance with the court's discovery orders emerges, the judge is entitled to act with swift decision").[3]  The Court finds that a lesser sanction, such as a monetary penalty, would be fruitless given Mr. Westbrook's conduct thus far.  The circumstances here justify striking his claim.[4]

---

[3] The Court finds that striking Mr. Westbrook's claim is also appropriate under the circumstances of this case pursuant to the Court's inherent power.  *See, e.g.*, *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) (a court may exercise its "inherent power to fashion an appropriate sanction for conduct which abuses the judicial process") (citation and quotation marks omitted).

[4] Mr. Westbrook argues in his response brief that the Court should decide his claim on the merits, but it is Mr. Westbrook's actions, and his actions alone, that have prevented that from happening.  In order to receive an adjudication on the merits, Mr. Westbrook had to comply with applicable discovery rules and, particularly, the Court's numerous orders that he do so.  He has not, and the consequence is that his claim is stricken.  His *pro se* status is irrelevant.  *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) ("it is…well established that pro se litigants are not excused from compliance with procedural rules").

In sum, the Court **GRANTS** the Government's Second Motion to Strike Claimant's Claim, [Filing No. 58], based on Mr. Westbrook's willful and continuous refusal to comply with the Court's orders regarding providing a full response, signed under oath, to Special Interrogatory 8. His untimely response, filed well after the "last chance" deadline for doing so, does not erase his prior behavior, and does not save his claim.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Westbrook's Response to the Court's Provision of "One More Chance to Provide a Complete Response to Special Interrogatory 8," treated as a Motion to Reconsider the Court's February 29, 2016 Order, [Filing No. 55], and **GRANTS** the Government's Second Motion to Strike Claimant's Claim, [Filing No. 58]. Mr. Westbrook's Claim for the seized currency, [Filing No. 8], is **STRICKEN**.

Date:  June 8, 2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Bronson T. Westbrook
1334 S. Burlington Dr.
Muncie, IN 47302